[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 347.]

SUTOWSKI *v.* ELI LILLY & COMPANY, ET AL.

[Cite as *Sutowski v. Eli Lilly & Co.*, 1998-Ohio-388.]

*Products liability—Civil actions—Market-share liability is not an available theory of recovery in a products liability action.*

In Ohio, market-share liability is not an available theory of recovery in a products liability action.

(No. 97-1142—Submitted April 7, 1998—Decided June 29, 1998.)

ON ORDER CERTIFYING A QUESTION OF STATE LAW from the United States District Court, Northern District of Ohio, Eastern Division, No. 1:97CV1283.

———————————

{¶ 1} This case comes before us as a certified question of state law from the United States District Court for the Northern District of Ohio, Eastern Division. In its certification order, the federal district court recounted the following:

"Petitioner June Sutowski filed the instant diversity action in federal district court naming 18 companies as party-defendants ('respondents' for purposes of this Order). Sutowski claims to have suffered damage to her reproductive system due to her *in utero* exposure to diethylstilbestrol (DES). Sutowski asserts that each of the named defendants is either a manufacturer, a distributor, or a parent or successor corporation to a manufacturer or distributor, of DES. Her complaint includes counts consisting of strict liability under products liability, negligence under products liability, breach of warranty and market share liability.

"In response, defendant/respondent Eli Lilly and Company ('Eli Lilly') filed a motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c). Among other things, Eli Lilly argues that judgment must be entered against Sutowski on her claim for relief under the market share theory of liability since Ohio has not recognized market share. Eli Lilly relies upon the recent decision in

*Kurczi v. Eli Lilly & Co.* [113 F.3d 1426 (6th Cir. 1997)], in which the Sixth Circuit announced that if 'directly presented with the issue, the Ohio Supreme Court would not adopt a market-share theory of liability in DES cases.' *Id.* at [1435]."

{¶ 2} Immediately preceding release of the *Kurczi* decision, this court decided *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, 677 N.E.2d 795, holding that common-law causes of action survive enactment of the Ohio Products Liability Act unless specifically abrogated by that statute's language. The Sixth Circuit did not consider *Carrel* when deciding *Kurczi.* The federal district court, believing that our decision in *Carrel* eroded the *Kurczi* analysis, certified the question presented.

_____

*Amer Cunningham Brennan Co., L.P.A., Jack Morrison, Jr.* and *E. Marie Wheeler;* and *Gary L. Himmel,* for petitioner.

*James J. Dillon* and *Kenneth A. Cohen; Squire, Sanders & Dempsey L.L.P., Robin G. Weaver* and *Paula B. Christ,* for respondent Eli Lilly & Co.

*Jones, Day, Reavis & Pogue, Kim F. Bixenstine* and *Paul D. Koethe,* for respondents Abbott Laboratories and McNeilab, Inc.

*A. Edward Grashof* and *Sheila AnnMarie Moeller; Roetzel & Andress* and *James R. Vaughn,* for respondent Dart Industries, Inc.

*Nicola, Gudbranson & Cooper, Matthew T. Fitzsimmons* and *Thomas A. Gattozzi*, for respondent Merck & Co., Inc.

*Frost & Jacobs, Frederick J. McGavran, Grant S. Cowan, Mina J. Jefferson* and *Jack B. Harrison,* for respondent Pharmacia & Upjohn Company.

*Baker & Hostetler, LLP,* and *Mary M. Bittence;* and *Marc S. Klein,* for respondent E.R. Squibb & Sons, Inc.

*Eric D. Statman; Brouse & McDowell* and *Sallie Conley-Lux*, in support of respondents for *amicus curiae,* Emons Industries, Inc.

*James M. Beck;* and *Hugh R. Young, Jr.,* in support of respondents for *amicus curiae,* Product Liability Advisory Council, Inc.

*Bricker & Eckler, LLP, Randolph C. Wiseman, Kurtis A. Tunnell, Sarah J. DeBruin* and *Matthew J. Arnold*, in support of respondents for *amicus curiae,* The Ohio Alliance for Civil Justice.

*Linda S. Woggon,* in support of respondents for *amicus curiae,* Ohio Chamber of Commerce.

_____

**COOK, J.**

{¶ 3} Pursuant to S.Ct.Prac.R. XVIII, the United States District Court certified the following question of law to this court:

"Whether market share exists in Ohio as a viable theory of liability in a DES products liability action[?]"

{¶ 4} We respond in the negative:  In Ohio, market-share liability is not an available theory of recovery in a products liability action.

MARKET-SHARE LIABILITY

{¶ 5} DES is a form of synthetic estrogen that gained widespread use in the early 1940s.  Its uses include hormone replacement during menopause, and the treatment of both senile and gonorrheal vaginitis.  By the late 1940s,  DES was also being used for the treatment of certain complications of pregnancy.  Researchers in the early 1970s, however, discovered a high incidence of clear cell adenocarcinoma, a rare form of cancer,  in women exposed to DES *in utero*.  As a result, use of DES during pregnancy ceased.  Other reproductive disorders such as a predisposition to miscarry, the injury Sutowski claims, have also been attributed to *in utero* DES exposure.  See, generally, Comment, Samuelson, DES, RU-486 and Deja Vu (1993), 2 J. Pharmacy & L. 56; Note, Russell, The Causation Requirement:  Guardian of Fairness or Obstacle to Justice?—Making Sense of a Decade of DES Litigation (1991), 25 Suffolk U.L.Rev. 1071.  See, also, *Grover v.*

*Eli Lilly & Co.* (1992), 63 Ohio St.3d 756, 591 N.E.2d 696 (Petitioner's deformed reproductive organs resulted in an inability to carry her son to full term.).

{¶ 6} Because DES was not patented, some two hundred to three hundred different drug companies produced DES in the years it was widely prescribed for use during pregnancy. Due to the long interval between DES use and manifestation of its effects a generation later, the great number of possible manufacturer-defendants, and the primarily generic form of the drug, many DES plaintiffs experienced difficulty identifying the particular manufacturer of the drug taken by their mothers years earlier. Note, 25 Suffolk U.L.Rev. at 1071-1072. Many manufacturers were no longer in business, medical and pharmacy records were lost or destroyed, and memories had dulled over time. Strickland & Katerndahl, An Overview of the Development of Market Share Liability (1992), 446 Practising Law Institute—Litigation 277, 281-282.

{¶ 7} In response to the DES plaintiff's inability to establish causation, the California Supreme Court fashioned the market-share theory of liability in its benchmark decision, *Sindell v. Abbott Laboratories* (1980), 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924. In *Sindell,* the trial court dismissed a DES plaintiff's complaint because she was unable to identify the particular manufacturer of the drug prescribed for her mother. The supreme court reversed, resolving in the plaintiff's favor the conflict between the traditional causation requirement of tort law and the desire to insulate an innocent plaintiff from bearing the cost of injury.

{¶ 8} The California Supreme Court determined that the theory of alternative liability was inapplicable in light of the plaintiff's inability to join all DES manufacturers in the action. *Sindell,* 26 Cal.3d at 598-603, 163 Cal.Rptr. at 136-139, 607 P.2d at 928-931. The court also rejected the theories of concert of action and enterprise liability. *Id.* at 604-606, 609-610, 163 Cal.Rptr. at 140-141, 143, 607 P.2d at 932-933, 935. Rather than affirming dismissal of the action, the *Sindell* majority adopted the novel theory of market-share liability proposed in a

Fordham Law Review student comment. *Id.* at 611-613, 163 Cal.Rptr. at 144-146, 607 P.2d at 936-938, citing Comment, Sheiner, DES and a Proposed Theory of Enterprise Liability (1978), 46 Fordham L.Rev. 963. The court cited the following three policy considerations in favor of relieving the plaintiff of the burden of proving causation: (1) the manufacturer should bear the cost of injury as between it and an innocent plaintiff, (2) manufacturers are better able to bear the cost of injury resulting from defective products, and (3) because manufacturers are in a better position to discover and prevent product defects and to warn consumers of harmful effects, imposing liability would further ensure product safety. *Sindell,* 26 Cal.3d at 610-611, 163 Cal.Rptr. at 144, 607 P.2d at 936.

**{¶ 9}** Recognizing that "there is a possibility that none of the five defendants in this case produced the offending substance," the California Supreme Court nonetheless justified shifting the burden of proof of causation to the defendant. *Id.* at 611, 163 Cal.Rptr. at 144-145, 607 P.2d at 936-937. To this end, the market-share plaintiff need only (1) identify an injury caused by a fungible product, and (2) join in the action a substantial share of the manufacturers of that product. *Id.*, 26 Cal.3d at 610-612, 163 Cal.Rptr. at 144-145, 607 P.2d at 936-937. The burden then shifts to each defendant-manufacturer to prove that it did not make the particular injurious product. *Id.* Market-share liability thus enables a plaintiff who cannot identify a particular tortfeasor to sustain a tort cause of action despite an inability to show proximate causation.

**{¶ 10}** Any manufacturer unable to prove it did not produce the product at issue is held severally liable for the proportion of the plaintiff's awarded damages that reflects the manufacturer's total share of the product market. *Brown v. City & Cty. of San Francisco Superior Court* (1988), 44 Cal.3d 1049, 1072-1076, 245 Cal.Rptr. 412, 426-428, 751 P.2d 470, 485-487; *Sindell,* 26 Cal.3d at 611-612, 163 Cal.Rptr. at 145, 607 P.2d at 937. In support of this unique method of damage allocation, the court reasoned that a defendant-manufacturer's percentage share of

the total market for a product is proportional to the likelihood that the defendant-manufacturer produced the specific product that injured the plaintiff. *Id.* The only causation a plaintiff need prove in order to recover under a market-share theory is the causal connection between exposure to, or use of, the product at issue and the injury sustained.

**{¶ 11}** This atypical theory of tort recovery has not gained wide acceptance outside California. Of the courts that have examined market-share liability in the DES context, most have not considered it a plausible theory of recovery.[1] Ohio may now be numbered among those that have considered and rejected the market-share theory in the DES context.

## OHIO TORT LAW

**{¶ 12}** Ohio common law has long required a plaintiff to prove that a particular defendant caused his or her injury through negligence.[2] " 'The rule is

---

1. See *Wood v. Eli Lilly & Co.* (C.A.10, 1994), 38 F.3d 510 (applying Oklahoma law); *Tidler v. Eli Lilly & Co.* (C.A.D.C.1988), 851 F.2d 418 (applying the law of both Maryland and the District of Columbia); *Mizell v. Eli Lilly & Co.* (D.S.C.1981), 526 F.Supp. 589 (applying South Carolina law); *Gorman v. Abbott Laboratories* (R.I.1991), 599 A.2d 1364; *Smith v. Eli Lilly & Co.* (1990), 137 Ill.2d 222, 148 Ill.Dec. 22, 560 N.E.2d 324; *Mulcahy v. Eli Lilly & Co.* (Iowa 1986), 386 N.W.2d 67; *Zafft v. Eli Lilly & Co.* (Mo.1984), 676 S.W.2d 241. See, also, *Braune v. Abbott Laboratories* (E.D.N.Y.1995), 895 F.Supp. 530 (stating Georgia has not recognized market-share liability); *Abel v. Eli Lilly & Co.* (1984), 418 Mich. 311, 343 N.W.2d 164 (In recognizing the applicability of concert of action and alternative liability theories in DES cases, the court avoided adopting market-share liability; instead, the court held that DES plaintiffs must bring into court *all* actors who may have caused the injury, with those who are unable to exculpate themselves being held jointly and severally liable.); *Namm v. Charles E. Frosst & Co., Inc.* (1981), 178 N.J.Super. 19, 34-35, 427 A.2d 1121, 1128-1129 (The court rejected alternative liability and enterprise liability as theories that would "distort or abando[n] altogether" traditional concepts of tort law.).

2. See *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44 (The general rule is that a medical malpractice plaintiff must prove causation to establish that the injury was, more likely than not, caused by the defendant's negligence.); *Kuhn v. Banker* (1938), 133 Ohio St. 304, 10 O.O. 373, 13 N.E.2d 242 (A directed verdict is appropriate where plaintiff failed to prove defendant's negligent actions were the proximate cause of injury.); *St. Marys Gas Co. v. Brodbeck* (1926), 114 Ohio St. 423, 151 N.E. 323 (Where *res ipsa loquitur* is inapplicable, negligence will not be presumed from fact of injury—plaintiff must prove defendant's acts were the direct and proximate cause of injury.); *Cleveland City Ry. Co. v. Osborn* (1902), 66 Ohio St. 45, 63 N.E. 604 (Plaintiff must show injury was proximately caused by an act of culpable negligence on the defendant's part.).

elementary, that the defendant in an action for negligence can be held to respond in damages only for the immediate and proximate result of the negligent act complained of, and in determining what is direct or proximate cause, the rule requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act.' " *Foss-Schneider Brewing Co. v. Ulland* (1918), 97 Ohio St. 210, 218, 119 N.E. 454, 457, quoting *Miller v. Baltimore & Ohio Southwestern RR. Co.* (1908), 78 Ohio St. 309, 325, 85 N.E. 499, 504. See, also, *Jeffers v. Olexo* (1989), 43 Ohio St.3d 140, 142-143, 539 N.E.2d 614, 616-617 (Proximate cause requires that the defendant foresee the injury; foreseeability depends upon the defendant's knowledge.). The plaintiff must establish a causal connection between the defendant's actions and the plaintiff's injuries, which necessitates identification of the particular tortfeasor.

{¶ 13} Under the market-share theory, the plaintiff is discharged from proving this important causal link. The defendant actually responsible for the plaintiff's injuries may not be before the court. Such a result collides with traditional tort notions of liability by virtue of responsibility, and imposes a judicially created form of industry-wide insurance upon those manufacturers subject to market-share liability. In the end, "manufacturers are required to pay or contribute to payment for injuries which their product may not have caused." *Mulcahy v. Eli Lilly & Co.* (Iowa 1986), 386 N.W.2d 67, 76. This is not the law in Ohio: "Manufacturers are not insurers of their products." *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 8, 523 N.E.2d 489, 496.

{¶ 14} In *Minnich v. Ashland Oil Co.* (1984), 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199, this court adopted the doctrine of alternative liability where the plaintiff "allege[d] two negligent defendants and a single proximate cause." *Id.* at 398, 15 OBR at 512-513, 473 N.E.2d at 1201. John Minnich was injured in an

ethyl acetate explosion while at work. He alleged that the chemical was delivered to his employer in a defective condition, and that both the Ashland Oil Co. and the M.J. Daly Co. supplied all the ethyl acetate used by his employer. Minnich was unable, however, to identify which of the two companies supplied the particular ethyl acetate that exploded the morning of his injury.

{¶ 15} In applying alternative liability to the facts in *Minnich*, this court did not relieve the plaintiff of the burden of identifying the tortfeasors. See *id.* at 397-398, 15 OBR at 512, 473 N.E.2d at 1200-1201. Rather, Minnich had to show that both companies were negligent and that his injuries were caused by the negligence of one of the two. *Id.* Alternative liability relieved Minnich only from proving which of the two identified tortfeasors caused his injuries. *Id.* See, also, *Summers v. Tice* (1948), 33 Cal.2d 80, 199 P.2d 1.

{¶ 16} Three years after *Minnich*, this court decided *Goldman v. Johns-Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691, an asbestos-litigation case wherein the court rejected both alternative and market-share liability. In rejecting application of alternative liability in *Goldman*, the majority stated:

"The key point in alternative liability, then, is that the plaintiff must still prove that all the defendants acted tortiously. * * *

" * * * In this case, it is clear that Goldman has not been able to show that any of the defendants acted tortiously, because she is unable to show that *any* of the defendants remaining in this case supplied *any* asbestos products to the Sherlock Bakery. Alternative liability does not do away entirely with the burden of showing proximate causation; rather, this theory relaxes only the traditional requirement that the plaintiff demonstrate that a specific defendant (or defendants) caused the injury. But the relaxation is only warranted where plaintiff shows that all defendants acted tortiously." (Emphasis *sic.*) *Id.* at 45-46, 514 N.E.2d at 696.

{¶ 17} The *Goldman* majority also rejected application of the market-share theory of liability. While in dicta the *Goldman* court presumed that DES litigation

was better suited to application of market-share liability, it did not, as Sutowski suggests, state that market-share liability is an available remedy in Ohio. Citing a lack of fungibility, difficulty in defining the asbestos market, and the absence, due to bankruptcy, of the largest asbestos supplier in the world, the court explained that adoption of the market-share theory was a matter singularly suited for the legislature. *Goldman,* 33 Ohio St.3d at 50-51, 514 N.E.2d at 700-701.

{¶ 18} " 'Plaintiffs request that we make a substantial departure from our fundamental negligence requirement of proving causation, without previous warning or guidelines. The imposition of liability upon a manufacturer for harm that it may not have caused is the very legal legerdemain, at least by our long held traditional standards, that we believe the courts should avoid unless prior warnings remain unheeded. It is an act more closely identified as a function assigned to the legislature under its power to enact laws.' " *Id.* at 52, 514 N.E.2d at 702, quoting *Mulcahy,* 386 N.W.2d at 75-76.

{¶ 19} Codified in 1988, the Ohio Products Liability Act, R.C. 2307.71 *et seq.*, provided:

"Any recovery of compensatory damages based on a product liability claim is subject to sections 2307.71 to 2307.79 of the Revised Code." Former R.C. 2307.72(A), 142 Ohio Laws, Part I, 1676.[3]

{¶ 20} Former R.C. 2307.71 *et seq.* provided that manufacturers were subject to liability under the Act only if the plaintiff established (1) that the product was defective at the time it left the control of its manufacturer, and (2) that the defective aspect of the product proximately caused the plaintiff's injury. Former R.C. 2307.73(A), 2307.74, 2307.75, 2307.76, and 2307.77. Although enacted after

---

3. The Products Liability Act contains recent amendments, effective January 27, 1997, that do not substantively change former R.C. 2307.72(A).

Sutowski filed her claim, the current version of R.C. 2307.73(A) is also instructive. It provides:

"A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, all of the following:

"(1) * * * the product was defective * * * .

"(2) * * * a defective aspect of the product * * * was a *proximate cause* of harm for which the claimant seeks to recover compensatory damages.

"(3) *The manufacturer designed, formulated, produced, created, made, constructed, assembled, or rebuilt the product.*"  (Emphasis added.)

{¶ 21} Moreover, the General Assembly specifically stated that its purpose in enacting current R.C. 2307.791 was "to codify an essential requirement for the use of the alternative liability theory in actions brought under Ohio law, as enunciated by" this court in *Minnich* and *Goldman*.  Section 5(Q), Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 4028.  R.C. 2307.791 provides:

"A manufacturer shall not be held liable for damages based on a product liability claim that asserts any of the following theories:

"(A) Industrywide or enterprise liability * * * .

"(B) Alternative liability, except when all possible tortfeasors are named and subject to the jurisdiction of the court."

{¶ 22} Statutory language that is plain and unambiguous, and conveys a clear and definite meaning, needs no interpretation.  *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability Pension Fund* (1994), 69 Ohio St.3d 409, 412, 632 N.E.2d 1292, 1295.  In this instance, the 1988 version of the Products Liability Act applicable to Sutowski's claim unmistakably required identification of a particular tortfeasor:  the successful plaintiff had to establish that the harmful product was defective when it left the manufacturer's control.  While not applied

retroactively, the 1997 amendments to the Act serve to conclusively reinforce this identification requirement.

**{¶ 23}** In *Kurczi v. Eli Lilly & Co.* (1997), 113 F.3d 1426, the Sixth Circuit reviewed both Ohio decisional law and the Ohio Products Liability Act. The court based its conclusion that "the Ohio Supreme Court would not adopt a market-share theory of liability in DES cases," *id.* at 1435, on the following: (1) Ohio common law embraces the fundamental principle of tort law that a plaintiff must prove that the negligence of a particular defendant caused injury, (2) the 1988 Ohio Products Liability Act "embodies the general common law principle that a plaintiff has to prove an injury proximately caused by a particular defendant," *id.* at 1432, and (3) presuming the General Assembly was aware of the *Minnich* and *Goldman* decisions, alternative and market-share liability schemes are noticeably absent from the 1988 Act. *Kurczi*, 113 F.3d at 1430-1434. This analysis by the Sixth Circuit is unassailable, our decision in *Carrel* notwithstanding.

**{¶ 24}** The district court in Sutowski's case perceived a possible conflict between *Kurczi* and the majority decision in *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, 677 N.E.2d 795. In *Kurczi*, the Sixth Circuit stated that "the Products Liability Act is clear: it does not by its express terms provide for market share liability and it is by its express terms exclusive. Thus, the Ohio Supreme Court would be precluded from adopting a new legal cause of action." *Kurczi*, 113 F.3d at 1434. In contrast, the *Carrel* court held that " 'all common-law products liability causes of action survive the enactment of R.C. 2307.71 *et seq.*, the Ohio Products Liability Act, unless *specifically* covered by the Act * * * .' " (Emphasis *sic.*) *Carrel*, 78 Ohio St.3d at 289, 677 N.E.2d at 800, quoting *Byers v. Consol. Aluminum Corp.* (1995), 73 Ohio St.3d 51, 52, 652 N.E.2d 643, 644 (Douglas, J., dissenting); and *Curtis v. Square-D Co.* (1995), 73 Ohio St.3d 79, 652 N.E.2d 664 (Douglas, J., dissenting).

**{¶ 25}** Although *Carrel* and *Kurczi* are at odds in their analysis of the scope of the Ohio Products Liability Act, the *Carrel* decision does not undermine the validity of the Sixth Circuit's ultimate conclusion in *Kurczi*. The Ohio Products Liability Act does not provide for market-share liability. Furthermore, based on the foregoing analysis, the market-share theory is not a part of Ohio common law that could be deemed, under *Carrel*, to survive the enactment of R.C. 2307.71 *et seq*.

**{¶ 26}** Accordingly, we hold that in Ohio, market-share liability is not an available theory of recovery in a products liability action.

CONCLUSION

**{¶ 27}** We recognize that the DES plaintiff who, without fault, is unable to identify the manufacturer responsible for her injury engenders sympathy. It is, however, the role of the court to interpret the law, not to legislate. *Cablevision of the Midwest, Inc. v. Gross* (1994), 70 Ohio St.3d 541, 544, 639 N.E.2d 1154, 1156. We believe the General Assembly should decide the policy question of whether Sutowski's claims, or others like hers, warrant substantially altering Ohio's tort law.

*Judgment accordingly.*

MOYER, C.J., QUILLIN and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., dissent.

DANIEL B. QUILLIN, J., of the Ninth Appellate District, sitting for RESNICK, J.

_____

**DOUGLAS, J., dissenting.**

**{¶ 28}** The majority, by today's decision, rings the death knell for most of the DES litigation in Ohio. Specifically, the majority, in the syllabus, writes the following prescription for claimants who have been injured by DES and who, through no fault of their own, have been unable to identify the particular

manufacturer of the product that caused their injuries: "In Ohio, market-share liability is not an available theory of recovery in a products liability action." This prescription by the majority is the functional equivalent of saying: "Take two aspirin and *do not* call us in the morning." I respectfully dissent!

{¶ 29} The majority's holding in this case is not only contrary to general notions of fairness and equity, but it is also predicated on numerous misstatements and misapplications of law. A reading of today's decision should reveal to any interested person that the majority quite simply does not wish to recognize market-share liability and, to that end, it has concocted a rationale to support its predetermined conclusion that market-share liability is not a viable theory of recovery in Ohio.

{¶ 30} The majority's entire decision in this case is built upon the erroneous premise that market-share liability relieves a plaintiff of the obligation to prove proximate causation. For instance, in the section of the opinion entitled "MARKET-SHARE LIABILITY," the majority says that "[i]n response to the DES plaintiff's inability to establish causation, the California Supreme Court fashioned the market-share theory of liability in its benchmark decision, *Sindell v. Abbott Laboratories* (1980), 26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924." The majority further claims that the *Sindell* court "reliev[ed] the plaintiff of the burden of proving causation." The majority also asserts that "[m]arket-share liability thus enables a plaintiff who cannot identify a particular tortfeasor to sustain a tort cause of action *despite an inability to show proximate causation*." (Emphasis added.) The fallacy of this argument is demonstrated by a brief discussion of *Goldman v. Johns-Manville Sales Corp*. (1987), 33 Ohio St.3d 40, 514 N.E.2d 691.

{¶ 31} *Goldman* involved questions concerning the alternative liability theory and the market-share liability theory in the context of asbestos litigation. At the outset of the *Goldman* decision*,* this court emphasized that "it is important to understand that both alternative liability and market-share liability are *exceptions*

to the general rule that a plaintiff has to prove an injury was caused by the negligence of a *particular* defendant. * * * *[B]oth theories merely relax the requirement that the plaintiff identify which one of a group of negligent tortfeasors caused the injury to the plaintiff.* In the context of asbestos litigation, the plaintiff has the burden of proving exposure to asbestos-containing products. A defendant is not liable under either theory if the evidence fails to establish that [the victim] was exposed to the type of product it produced." (Emphasis added.) *Id.* at 42, 514 N.E.2d at 693.

{¶ 32} In *Goldman,* a majority of this court determined that the alternative liability theory was not applicable to the facts of that case, holding that "[a]lternative liability theory in an asbestos litigation case will be rejected where the plaintiff is unable to prove that the injury was caused by the asbestos-containing products of any of the defendants before the court." *Id.* at paragraph two of the syllabus. The *Goldman* court also held that "*[m]arket-share liability* is inappropriate as a viable theory of recovery *in an asbestos litigation case*, especially where it cannot be shown that all the products to which the injured party was exposed are completely fungible." (Emphasis added.) *Id.* at paragraph three of the syllabus.

{¶ 33} As *Goldman* clearly illustrates, market-share liability does not eliminate the need for proof of proximate causation. Rather, the theory of market-share liability merely relaxes the requirement that the injured plaintiff identify which *one* of a group of tortfeasors caused the plaintiff's injuries. *Id.* at 42, 514 N.E.2d at 693. The plaintiff still must prove proximate causation, but need not identify the specific party that was actually responsible for the plaintiff's particular injury. Today's majority has gone to great lengths to distort that issue.

{¶ 34} Recognizing the fallacy of the argument that market-share liability dispenses with the need for proof of proximate causation, the majority then resorts

to a shell game with the issues, hoping that the resulting confusion will carry the day.

{¶ 35} In the section of the opinion entitled "OHIO TORT LAW," the majority states that "Ohio common law has long required a plaintiff to prove that a particular defendant caused his or her injury through negligence." Although this statement is undoubtedly true in a number of contexts, it is fundamentally untrue when it comes to the alternative liability theory and, of course, the market-share liability theory. Both of these theories were specifically developed to eliminate that identification requirement. Although the majority specifically recognizes that fact with respect to market-share liability, the majority ignores it with respect to alternative liability. The majority states that "[u]nder the *market-share theory*, the plaintiff is discharged from proving this important causal link," *i.e.*, identification of the particular tortfeasor responsible for the injury. (Emphasis added.) The fact is that the same thing is basically true under the alternative liability theory.

{¶ 36} The majority then attempts to further isolate the theory of market-share liability by engaging in a blatantly distorted discussion of *Minnich v. Ashland Oil Co.* (1984), 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199, and the alternative liability theory. The purpose of the majority's discussion of *Minnich* should be obvious—the majority seeks to leave the reader with the mistaken impression that the alternative liability theory requires identification by the plaintiff of the particular tortfeasor that caused the plaintiff's harm, whereas market-share theory does not. However, with respect to alternative liability, this court, in *Minnich*, adopted 2 Restatement of the Law 2d, Torts (1965), Section 433B(3), which states that "[w]here the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff *by only one of them, but there is uncertainty as to which one has caused it*, the burden is upon each such actor to prove that he has not caused the harm." (Emphasis added.) *Minnich*, syllabus. We followed *Minnich* in *Goldman*, 33 Ohio St.3d 40, 514 N.E.2d 691, paragraph one

of the syllabus, wherein we held that "[u]nder the alternative liability theory, plaintiff must prove (1) that two or more defendants committed tortious acts, and (2) that plaintiff was injured as a proximate result of the wrongdoing of one of the defendants." Clearly, under the alternative liability theory, the plaintiff need not demonstrate which of the tortfeasors caused the plaintiff's harm. See, also, *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 556 N.E.2d 505. Thus, identification by the plaintiff of the particular tortfeasor responsible for the injury is not necessary under the alternative liability theory, as is also the case in the context of market-share liability.

{¶ 37} Next, the majority addresses the *Goldman* decision. Prior to today, *Goldman* was the only case in which this court discussed the market-share theory of liability. *Goldman* involved, among other things, the question whether market-share liability should be recognized in the context of an asbestos case.

{¶ 38} In discussing *Goldman*, the majority says that "[t]hree years after *Minnich*, this court decided [*Goldman*], an asbestos litigation case wherein the court rejected both alternative and market-share liability." Thus, according to the majority, *Goldman* rejected both alternative and market-share liability as viable theories of recovery in Ohio. Nothing could be further from the truth. The alternative liability theory is alive and well in Ohio and has been addressed and/or applied in various contexts before and after *Goldman* was decided. See, *e.g.*, *Minnich*, 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199; *Huston,* 52 Ohio St.3d 214, 556 N.E.2d 505; and *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196. The truth is that *Goldman* rejected alternative liability on the facts of that case, and refused to apply market-share liability *in asbestos litigation* only. The *Goldman* court disapproved of market-share liability in asbestos litigation not because of any disapproval of the market-share theory in general, but because the court determined that asbestos was not a fungible product. *Goldman,* 33 Ohio St.3d at 50-51, 514 N.E.2d at 700-701. In contrast, DES is a

fungible product, as the court in *Goldman* recognized. *Id.* In this regard, *Goldman* left for future consideration the question whether market-share liability is applicable in other contexts. *Id.* at 51-52, 514 N.E.2d at 701-702. Moreover, the *Goldman* court favorably discussed the development of, and the policy reasons behind, judicially created market-share liability for DES litigation, stating:

"Market-share theory was developed by the California Supreme Court in *Sindell v. Abbott Laboratories, supra.* In that case, the court was faced with a class-action suit brought by the daughters of women who had taken the anti-miscarriage drug, DES. This drug, ingested by pregnant women, had caused cancer in several of their daughters.

"The *Sindell* court actually *rejected* all of the plaintiffs' theories of recovery, *including* the alternative liability theory of *Summers* [*v. Tice* (1948), 33 Cal.2d 80, 199 P.2d 1]. The court, however, recognized the almost insurmountable problems of proof facing the DES plaintiffs, namely, the inability to identify which company or companies produced the DES ingested by their mothers while the plaintiffs were still in their mothers' wombs. The court then fashioned a variation of *Summers* alternative liability, on public policy grounds, to address the problem. The court justified its rule in the following terms:

" 'In our contemporary complex industrialized society, advances in science and technology create *fungible goods* which may harm consumers and which cannot be traced to any specific producer. The response of the courts can be either to adhere rigidly to prior doctrine, denying recovery to those injured by such products, or to fashion remedies to meet these changing needs. * * *

" 'The most persuasive reason for finding plaintiff states a cause of action is that advanced in *Summers*: as between an innocent plaintiff and negligent defendants, the latter should bear the cost of the injury. Here, as in *Summers*, plaintiff is not at fault in failing to provide evidence of causation, and although the absence of such evidence is not attributable to the defendants either, their conduct

in marketing a drug the effects of which are delayed for many years played a significant role in creating the unavailability of proof.

" ' * * *

" 'Where, as here, *all defendants produced a drug from an identical formula* and the manufacturer of the DES which caused plaintiff's injuries cannot be identified through no fault of plaintiff, a modification of the rule of *Summers* is warranted. As we have seen, an undiluted *Summers* rationale is inappropriate to shift the burden of proof of causation to defendants because if we measure the chance that any particular manufacturer supplied the injury-causing product by the number of producers of DES, there is a possibility that none of the five defendants in this case produced the offending substance and that the responsible manufacturer, not named in the action, will escape liability.

" 'But we approach the issue of causation from a different perspective: we hold it to be reasonable in the present context to measure the likelihood that any of the defendants supplied the product which allegedly injured plaintiff by the percentage which the DES sold by each of them for the purpose of preventing miscarriage bears to the entire production of the drug sold by all for the purpose. Plaintiff asserts in her briefs that Eli Lilly and Company and five or six other companies produce 90 percent of the DES marketed. If at trial this is established to be the fact, then there is a corresponding likelihood that this comparative handful of producers manufactured the DES which caused plaintiff's injuries, and only a 10 percent likelihood that the offending producer would escape liability.

" 'If plaintiff joins in the action the manufacturers of a substantial share of the DES which her mother might have taken, the injustice of shifting the burden of proof to defendants to demonstrate that they could not have made the substance which injured plaintiff is significantly diminished. While 75 to 80 percent of the market is suggested * * *, we hold only that a substantial percentage is required.

18

" 'The presence in the action of a substantial share of the appropriate market also provides a ready means to apportion damages among the defendants. Each defendant will be held liable for the proportion of the judgment represented by its share of that market unless it demonstrates that it could not have made the product which caused plaintiff's injuries.' (Emphasis added.) *Sindell*, *supra*, 26 Cal.3d at 610-612, 163 Cal.Rptr. at 144-145, 607 P.2d at 936-937.

"Notwithstanding the policy reasons cited by the *Sindell* court, it is clear that the significant factual differences between the DES cases and asbestos litigation make market-share liability inappropriate to this case. The foremost difficulty is the concept of *fungibility*. Market-share liability is inappropriate as a viable theory of recovery in an asbestos litigation case, especially where it cannot be shown that all the products to which the injured party was exposed are completely fungible. DES was a synthetic estrogen that was produced pursuant to a single formula. Thus, while the drug was marketed by two hundred companies, there was no difference in the drug or its health risks. In contrast, asbestos is not a 'product,' but rather a generic name for a family of minerals. * * *

"The courts that have considered the application of market-share liability to asbestos litigation have uniformly rejected the theory based on the lack of fungibility, as well as the difficulty in defining the market. For example, a federal district court, sitting in California, refused to apply *Sindell* to an asbestos case, even though market-share liability had been recognized in California by *Sindell*. * * *

" * * *

"While arguably the difficulties of applying market-share liability in this case are not so acute because the 'product field' is narrowed to [asbestos] tape, inherent difficulties remain.

" * * * In the case of DES, however, there is no difference among the products distributed by the various companies. Crucial to the *Sindell* court's reasoning was this fact: there was no difference between the risks associated with

the drug as marketed by one company or another, and as all DES sold presented the same risk of harm, there was no inherent unfairness in holding the companies accountable based on their share of the DES market. This fundamental difference between DES and asbestos — indeed, asbestos tape alone — is enough to undercut the *Sindell* justification for market-share theory in this case.

"* * *

"While we are not unmindful of the great difficulties faced by victims of asbestos exposure, the answer is not contained in a market-share theory that was advanced to address a situation with fewer complexities than those surrounding asbestos exposure [*i.e.*, situations involving exposure to DES] and the litigation it has spawned.

"We can perceive of no problem more in need of a legislative solution [*i.e.*, the insurmountable problem of proof for victims of asbestos exposure]. * * *

"* * *

"In conclusion, * * * [e]ven if we were to recognize market-share liability as a viable theory of recovery, this [asbestos case] is not the case in which to do so. * * *" (Emphasis *sic*.) *Goldman*, 33 Ohio St.3d at 49-52, 514 N.E.2d at 699-702.

{¶ 39} Today's majority concludes its discussion of *Goldman* by quoting a select passage from that case indicating that recognition of market-share liability is a function best addressed by the General Assembly. In reality, the *Goldman* court had indicated that legislative action was needed to address the particular problems associated with market-share liability in *asbestos* litigation, as opposed to litigation involving *DES* exposure. Apparently, today's majority has selectively quoted from *Goldman* to create the impression that the General Assembly is the only appropriate body to recognize the market-share liability theory in *DES* litigation. The majority then uses that misguided impression as a platform for launching into a tortured analysis of Ohio's Products Liability Act. It is here that the majority's shell game becomes most deceptive.

**{¶ 40}** With respect to the 1988 version of Ohio's Products Liability Act, the majority says that "[f]ormer R.C. 2307.71 *et seq.* provided that manufacturers were subject to liability under the Act only if the plaintiff established (1) that the product was defective *at the time it left the control of its manufacturer*, and (2) that the defective aspect of the product *proximately caused* the plaintiff's injury." (Emphasis added.) In making that statement, the majority is apparently once again asserting that there is no requirement under the market-share liability theory that the plaintiff satisfy the burden of proving proximate causation. Similarly, the majority finds that the current version of R.C. 2307.73(A) is "instructive" on that issue, presumably because the statute indicates that a plaintiff in a product liability action has to show not only that the product was defective and that the defective aspect of the product was a proximate cause of the injury, but that the manufacturer designed, formulated, produced, created, made, constructed, assembled, or rebuilt the product. However, it should be obvious to anyone that for DES claimants to recover against DES manufacturers under the market-share theory of liability, the plaintiff would be required to demonstrate that DES was a defective product at the time it left the control of DES manufacturers, and that DES proximately caused the plaintiff's injuries. Further, it bears repeating that market-share liability *does not* eliminate the need for proof of proximate causation as the majority has suggested— rather, it "merely relax[es] the requirement that the plaintiff identify which one of the group of negligent tortfeasors caused the injury to the plaintiff." *Goldman* at 42, 514 N.E.2d at 693. Even the majority begrudgingly recognizes this when it admits, elsewhere in the decision, that "[t]he only causation a plaintiff need prove in order to recover under a market-share theory is the causal connection between exposure to, or use of, the product at issue [*i.e.*, DES] and the injury sustained."

**{¶ 41}** Moreover, the plaintiff in a DES case involving market-share liability must aver that the defendants assembled in the litigation are, for instance, DES manufacturers, as opposed to manufacturers of "Beanie Baby" toys, Barbie

21

Dolls, or some other product or material that is unrelated to DES. The common-law elements for market-share liability are as follows: (1) the product at issue must be fungible, (2) the plaintiff is unable to identify the specific manufacturer, (3) *there must be joinder of manufacturers representing a substantial share of the market*, (4) the product is defective, and (5) the plaintiff was injured as a proximate result of the defective aspect of the product. See, generally, *Goldman,* 33 Ohio St.3d 40, 514 N.E.2d 691, and *Jackson v. Glidden Co.* (1995), 98 Ohio App.3d 100, 647 N.E.2d 879. The plaintiff in DES litigation who demonstrates the existence of these elements will have satisfied the burden of demonstrating that DES was defective at the time it left the control of DES manufacturers. The fact is that the common-law theory of market-share liability for DES litigation is entirely consistent with the causation requirement of the Ohio Products Liability Act.

{¶ 42} The majority also directs our attention to R.C. 2307.791, and states:

"Moreover, the General Assembly specifically stated that its purpose in enacting current R.C. 2307.791 was 'to codify an essential requirement for the use of the alternative liability theory in actions brought under Ohio law, as enunciated by' this court in *Minnich* and *Goldman*. Section 5(Q), Am.Sub.H.B. No. 350, 146 Ohio Laws, Part II, 4028. R.C. 2307.791 provides:

" 'A manufacturer shall not be held liable for damages based on a product liability claim that asserts any of the following theories:

" '(A) Industrywide or enterprise liability * * * .

" '(B) Alternative liability, except when all possible tortfeasors are named and subject to the jurisdiction of the court.' "

{¶ 43} I have absolutely no idea why the majority cites R.C. 2307.791 and the statement of legislative intention accompanying the enactment of Am.Sub.H.B. No. 350. The fact that R.C. 2307.791 indicates that a manufacturer cannot be held liable on the *alternative liability theory* unless all possible tortfeasors are named and subjected to the jurisdiction of the court has nothing to do with the market-

22

share theory of liability. If the majority is somehow suggesting that market-share liability equates to "alternative liability," or that market-share liability is "[i]ndustrywide or enterprise liability," then the majority is just plain wrong. The concept of market-share liability is different from the concept of alternative liability, and the concept of industrywide or enterprise liability is different from the concept of market-share liability and alternative liability. Market-share liability comes into play, if at all, only where the theory of alternative liability is inapplicable. *Goldman,* 33 Ohio St.3d at 48-49, 514 N.E.2d at 699 (recognizing that while market-share liability involves an assessment of damages, it is, fundamentally, a theory of assessing *liability*, and that the market-share liability theory applies only where the alternative liability theory does not). Indeed, the discussion of *Sindell* in today's majority decision demonstrates that even the majority is aware of the distinctions between industrywide or enterprise liability, alternative liability, and market-share liability.

**{¶ 44}** Further, the fact that the General Assembly, in R.C. 2307.791, mentions industrywide enterprise liability and alternative liability but says nothing regarding market-share liability speaks volumes on the General Assembly's true intentions. If the General Assembly had wished to exclude market-share liability as a theory of recovery for DES claimants in Ohio, it clearly would have included market-share liability in the list of excluded theories of liability in R.C. 2307.791. The fact that the General Assembly made no mention of market-share liability in R.C. 2307.791 indicates that the General Assembly viewed market-share liability as a matter for the courts to decide. Indeed, the history of Am.Sub.H.B. No. 350 confirms that the General Assembly did not wish to exclude market-share as a viable theory of liability in Ohio. As introduced in the 121st General Assembly, House Bill No. 350 contained provisions to exclude evidence of any of the following theories of liability in a claim against a manufacturer for product liability: (1) industrywide enterprise liability, and (2) market-share liability, when a

nonfungible product is involved. Proposed R.C. 2307.73(C) in H.B. No. 350 as introduced. In the course of the legislative process, the reference to market-share liability was removed. Am.Sub.H.B. No. 350, as subsequently enacted, made no mention of market-share liability. Under these circumstances, it is far more likely than not that the General Assembly, which was unquestionably aware of the market-share theory of liability, had absolutely no intention whatsoever when it enacted Am.Sub.H.B. No. 350 to preclude market-share liability as a viable theory of recovery in Ohio.

{¶ 45} Nevertheless, the majority concludes its discussion of the Ohio Products Liability Act by determining, out of thin air, that the language of the Act reveals an unmistakable legislative intention to have excluded market-share liability as a viable theory of recovery in a products liability case. Remarkably, the majority says:

"Statutory language that is *plain and unambiguous*, and conveys a clear and definite meaning, *needs no interpretation*. * * * In this instance, the 1988 version of the Products Liability Act applicable to Sutowski's claim unmistakably required identification of a particular tortfeasor: the successful plaintiff had to establish that the harmful product was defective when it left the manufacturer's control. While not applied retroactively, the 1997 amendments to the Act serve to conclusively reinforce this identification requirement." (Emphasis added.)

{¶ 46} Most assuredly, the majority has not applied the "plain and unambiguous" language of any statute, and the majority has certainly not considered the history of the Act. The 1988 version of the Product Liability Act says nothing whatsoever about market-share liability, and the 1997 amendments to the Act serve to "conclusively reinforce" nothing that the majority says. What the majority has done in this case is to *interpret* (or, more appropriately, *misinterpret*) the Act. The majority admits as much when it states, in the section of the decision entitled "CONCLUSION," that "[i]t is, however, the role of the court to *interpret*

24

*the law*, not to legislate." (Emphasis added.) Is this a deathbed confession by the majority that it has interpreted the Products Liability Act as opposed to applying the "plain and unambiguous" language of the Act, or is this just one more example of the multitude of errors and inconsistencies contained within the majority's decision?

**{¶ 47}** The majority also relies heavily on the Sixth Circuit's decision in *Kurczi v. Eli Lilly & Co.* (1997), 113 F.3d 1426, while ignoring the teachings of *Carrel v. Allied Products Corp.* (1997), 78 Ohio St.3d 284, 677 N.E.2d 795. In *Kurczi*, the Sixth Circuit predicted that this court would reject the market-share liability theory. The court in *Kurczi* reasoned that by omitting any reference to market-share liability in the 1988 Products Liability Act, the General Assembly rejected market-share liability *by implication*. The court stated that "the Products Liability Act is clear: it does not by its express terms provide for market share liability and it is by its express terms exclusive. Thus, the Ohio Supreme Court would be precluded from adopting a new legal cause of action." *Id.* at 1434. However, *Kurczi* did not address this court's decision in *Carrel*, which was decided shortly before the Sixth Circuit issued its decision in *Kurczi*.

**{¶ 48}** Today's majority, in its statement of the case, says that "[t]he Sixth Circuit did not consider *Carrel* when deciding *Kurczi*." This is undoubtedly true, since *Carrel* compels a different conclusion from the one reached by *Kurczi* and by today's majority. In *Carrel*, we recognized that " 'all common-law products liability causes of action survive the enactment of R.C. 2307.71 *et seq.*, the Ohio Products Liability Act, unless *specifically* covered by the Act * * *.' " (Emphasis sic.) *Id.*, 78 Ohio St.3d at 289, 677 N.E.2d at 800, quoting *Byers v. Consol. Aluminum Corp.* (1995), 73 Ohio St.3d 51, 52, 652 N.E.2d 643, 644 (Douglas, J., dissenting); and *Curtis v. Square-D Co.* (1995), 73 Ohio St.3d 79, 652 N.E.2d 664 (Douglas, J., dissenting). Despite this holding, the majority now says that "[a]lthough *Carrel* and *Kurczi* are at odds in their analysis of the scope of the Ohio

Products Liability Act, the *Carrel* decision does not undermine the validity of the Sixth Circuit's ultimate conclusion in *Kurczi*. *The Ohio Products Liability Act does not provide for market-share liability*." (Emphasis added.) What the majority is missing is that neither the 1988 Products Liability Act nor the 1997 amendments to the Act address market-share liability. Thus, under *Carrel*, the common-law market-share liability theory must survive!

{¶ 49} The majority then goes on to say that "the market-share theory is not a part of Ohio common law that could be deemed, under *Carrel*, to survive the enactment of R.C. 2307.71 *et seq*." The majority reaches this conclusion based on the majority's own analysis of Ohio law. However, I do not buy any of the majority's "analysis" in this case. I also take particular exception to the majority's statement that the "analysis by the Sixth Circuit [in *Kurczi*] is unassailable, our decision in *Carrel* notwithstanding." What the majority appears to be saying is that *Carrel* should be ignored.

{¶ 50} In the section of the majority's decision entitled "CONCLUSION," the majority states: "We recognize that the DES plaintiff who, without fault, is unable to identify the manufacturer responsible for her injury engenders sympathy. It is, however, the role of the court to interpret the law, not to legislate. * * * We believe that the General Assembly should decide the policy question of whether Sutowski's claims, or others like hers, warrant substantially altering Ohio's tort law." I have several observations concerning this section of the majority's decision.

{¶ 51} I am certain that the majority's expressions of sympathy for the victims of DES will be greeted with skepticism. These expressions of condolences will ring hollow indeed, particularly when the victims of DES read the flummery set forth in the majority decision. In the past, this court, when necessary and appropriate, has never hesitated to acknowledge or create fair and realistic remedies for injured victims under principles of the common law. See, *e.g.*, *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052, and

*Minnich,* 15 Ohio St.3d 396, 15 OBR 511, 473 N.E.2d 1199. The market-share theory of liability should be formally recognized and adopted by this court in the context of this case, and no one understands this better than the victims of DES.

{¶ 52} I also find it humorous to see the majority state in its conclusion that the General Assembly should decide the question whether Sutowski's claim warrants "altering" Ohio's tort law. Is the majority conceding that the General Assembly has, to date, never decided against market-share liability? This would be a peculiar (yet warranted) concession by the majority, since the majority has implied elsewhere in its decision that the General Assembly has already rejected the theory of market-share liability.

{¶ 53} Finally, it should be noted that the members of today's majority that have been elected to this court (Chief Justice Moyer and Associate Justices Cook and Stratton) say that it is the function of the General Assembly to decide the policy question of whether Ohio's tort law should be altered to allow Sutowski's claim. This is a strange claim given that we have decided other public policy questions that substantially alter Ohio tort and/or contract law, the most recent example being the case of *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201 (also decided this day). It would seem that one cannot have it both ways!

{¶ 54} Accordingly, I would answer the certified question by recognizing the viability of market-share liability in DES cases. Because the majority does not do so, I respectfully dissent.

F.E. SWEENEY and PFEIFER, concur in the foregoing dissenting opinion.

———————————

**PFEIFER, J., dissenting.**

{¶ 55} The right-to-remedy clause of the Ohio Constitution mandates that "every person, for an injury done him in his * * * person, * * * shall have remedy by due course of law." Section 16, Article I, Ohio Constitution. In *Burgess v. Eli*

*Lilly & Co.* (1993), 66 Ohio St.3d 59, 62, 609 N.E.2d 140, 142, this court stated, "This court has previously identified a practical and essential element of the Constitution's right-to-remedy clause: ' "When the Constitution speaks of remedy and injury to person, property or reputation, it requires an opportunity granted *at a meaningful time and in a meaningful manner*." ' (Emphasis added.)" Quoting *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 47, 512 N.E.2d 626, 628. The majority appears determined to ensure that the plaintiffs do not receive their constitutional right to a remedy.

**{¶ 56}** I embrace the market-share liability theory outlined *in Goldman v. Johns-Manville Sales Corp.* (1987), 33 Ohio St.3d 40, 514 N.E.2d 691. It would allow a remedy in a meaningful manner, assuming its elements can be established, without trammeling the rights of defendants. DES manufacturers can avoid liability by establishing that they did not distribute DES in Ohio.

**{¶ 57}** It is difficult to imagine a case better suited to market-share liability. DES was fungible, virtually impossible to differentiate, and most important, it was all bad. Nevertheless, the majority today essentially tells the injured women: We know you have been injured and we know that certain companies manufactured and distributed a defective drug to you or your mother, but because you do not know which specific company is responsible for the DES specific to you, we will hold none of the offending drug manufacturers accountable for the devastating harm they caused. Such a result does not comport with the constitutional mandate to provide a right to a remedy in a meaningful manner.

**{¶ 58}** It is unconscionable that any profoundly injured woman of the estimated four hundred thirty thousand Ohio women who took DES should be prohibited from successfully pursuing constitutionally protected compensation for injuries done simply because she can only trace the harm to a group of manufacturers of the same product. The fungibility of DES makes it virtually

impossible to pinpoint a specific defendant. Applying market-share liability is the only avenue for DES-injured women to successfully pursue a meaningful remedy.

{¶ 59} With their answer to the certified question, the majority is more comfortable shielding the defendant drug companies than with applying a theory of recovery that would allow the plaintiffs to go forward with their case. The majority's decision has the perverse effect of protecting a defendant class that undeniably manufactured, released, and profited from a horribly defective product while denying a chance of recovery to a class of injured women that undeniably did nothing wrong, except suffer the consequences of the ingestion of the defendants' defective drugs. The right-to-remedy clause has been turned on its head and the majority has effectively given these defendants the equivalent of a common-law right-to-immunity. DES-injured women will have to content themselves with knowing that they "engender sympathy." I dissent.

_____