**Mayor Michael R. WHITE,
et al., Plaintiffs,**

v.

**SMITH & WESSON, et al., Defendants.**

**No. 1:99 CV 1134.**

United States District Court,
N.D. Ohio.
Eastern Division.

March 14, 2000.

Cornell P. Carter, City of Cleveland, Dept. of Law, Cleveland, OH, John R. Climaco, Jack D. Maistros, Keith T. Vernon, Climaco, Lefkowitz, Peca, Wilcox & Garofoli, Cleveland, OH, Wendell H. Gauthier, Gauthier, Downing & LaBarre, Metairie, LA, for Micael R. White, City of Cleveland.

Timothy J. Coughlin, Thompson, Hine & Flory, Cleveland, OH, Thomas R. Schuck, Ross A. Wright, Taft, Stettinius & Hollister, Cincinnati, OH, Gary R. Long, Shook, Hardy & Bacon, Kansas City, MO, James P. Dorr, Anne G. Kimball, Sarah L. Olson, Wildman, Harrold, Allen & Dixon, Chicago, IL, Jessica Elaine Price, Taft, Stettinius & Hollister, Cleveland, OH, Barbara J. Arison, Frantz Ward, Cleveland, OH, for Smith & Wesson Corp.

Timothy J. Coughlin, Thompson, Hine & Flory, Cleveland, OH, James P. Dorr, Anne G. Kimball, Sarah L. Olson, Wildman, Harrold, Allen & Dixon, Chicago, IL, Barbara J. Arison, Cleveland, OH, for Sturm Ruger & Co.

Thomas Ignatius Michals, Steven R. Malynn, Calfee, Halter & Griswold, Cleveland, OH, Robert C. Gebhardt, Craig A. Livingston, Schnader, Harrison, Segal & Lewis, San Francisco, CA, Mark L. Belleville, Calfee, Halter & Griswold, Columbus, OH, Lawrence S. Greenwald, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, MD, for Beretta U.S.A.

Robert C. Weber, David F. Adler, Jones, Day, Reavis & Pogue, Cleveland, OH, for Colt's Mfg. Co.

William F. Gibson, III, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, John F. Renzulli, Renzulli & Rutherford, New York, NY, Nancy Tunis, Leonard Rosenbaum, Renzulli & Rutherford, New York, NY, for Glock, Inc., H & R 1871, Inc.

Daniel F. Gourash, Porter, Wright, Morris & Arthur, Cleveland, OH, Timothy A. Bumann, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Atlanta, GA, Melissa Anne Maye, Yorkville, IL, for Taurus Intern. Marketing, Inc.

William F. Gibson, III, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Robert Joyce, Wilson, Elser, Moskowitz, Edelman & Dicker, New York, NY, John F. Renzulli, Renzulli & Rutherford, New York, NY, for Sigarms, Inc.

Mark E. Elsener, Michael E. McCarty, Porter Wright, Morris & Arthur, Cincinnati, OH, James Clifford Sabalos, Newport Beach, CA, for Lorcin Engineering Co., Inc.

Mark E. Elsener, Michael E. McCarty, Porter Wright, Morris & Arthur, Cincinnati, OH, Daniel F. Gourash, Porter, Wright, Morris & Arthur, Cleveland, OH, James Clifford Sabalos, Newport Beach, CA, Melissa Anne Maye, Yorkville, IL, for Bryco Arms.

Daniel F. Gourash, Porter, Wright, Morris & Arthur, Cleveland, OH, Timothy A. Bumann, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Atlanta, GA, Michael J. Zomick, Tarics & Carrington, Houston, TX, for Phoenix Arms.

Ronald B. Lee, Laura M.A. Faust, Roetzel & Andress, Akron, OH, for Navegar Inc.

William F. Gibson, III, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, John F. Renzulli, Renzulli & Rutherford, New York, NY, William M. Griffin, III, Friday, Eldredge & Clark, Little Rock, AR, for Arms Technology, Inc.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court upon Certain Defendants'[1] Motion to Dis-

miss Pursuant to Rule 12(b)(6) (Doc. # 23) and Defendant B.L. Jennings's Motion to Dismiss (Doc. # 21) (collectively referred to below as Defendants). For the reasons stated below, Defendants' Motions to Dismiss are DENIED.

### Procedural History

On April 15, 1999, Mayor Michael White and the City of Cleveland filed a lawsuit against Defendants in the Court of Common Pleas, Cuyahoga County. Plaintiffs plead the following seven causes of action: (1) a claim under the Ohio Products Liability Act, OHIO REV. CODE § 2307.75, for Unreasonably Dangerous Design (against Manufacturing/Seller Defendants only); (2) a state common law claim of Negligent Design (against Manufacturing/Seller Defendants only); (3) a claim under the Ohio Products Liability Act, OHIO REV. CODE § 2307.76, for Unreasonably Dangerous Because of Inadequate Warning (against Manufacturing/Seller · Defendants only); (4) a state common law claim of unjust enrichment; (5) a claim for Nuisance Abatement under Cleveland City Code § 203.01; (6) a state common law claim of Public Nuisance; and, (7) a state common law claim of Negligence (against Trade Association Defendants only).

Defendants Glock, Inc., H & R 1871, Inc., and Hi–Point Firearms[2] removed the action to this Court on May 12, 1999. Although the other Defendants were not signatories to the Petition for Removal, they signed consent forms.[3]

Certain Defendants filed their Motion to Dismiss on July 26, 1999. Defendant B.L.

---

1. The "Certain" Defendants are Smith & Wesson Corp., Sturm, Ruger & Co., Beretta USA Corp., Colt's Manufacturing Co., Glock, Inc., Taurus International Manufacturing, Inc., Sigarms, Inc., Lorcin Engineering, Co., Bryco Arms, Phoenix Arms, Navegar, Inc., and Arms Technology and H & R 1871, Inc.

2. Plaintiffs, on November 10, 1999, dismissed Defendant Hi–Point Firearms, Inc., pursuant to Federal Rule of Civil Procedure 41(a)(1).

3. Because Defendant Lorcin was not served at the time of removal and because an unidentified person refused service on behalf of Defendant FMI, these Defendants were not "properly joined and served as defendants" at the time of removal and therefore their consent was not required. *See* 28 U.S.C. § 1441(b).

Jennings filed a Motion to join Certain Defendants' Motion to Dismiss on the same date. Plaintiffs filed a Brief in Opposition to Defendants' Motion on August 26, 1999, to which Defendants filed a Reply on September 20, 1999. Subsequently, Defendants and Plaintiffs filed supplemental authority in support of their respective positions.

The Trade Association Defendants [4] filed their Motion to Dismiss for Lack of Personal Jurisdiction on July 26, 1999. Plaintiffs filed a Brief in Opposition on September 8, 1999, to which the Trade Association Defendants replied on September 21, 1999.

The Court scheduled oral argument for October 29, 1999, in order to hear argument on Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) and the Trade Association Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. On that date, oral argument turned to whether or not removal was proper and whether the Court had proper subject matter jurisdiction over this case. After briefing by the parties, and dismissal of the only non-diverse party, the Court determined that diversity jurisdiction existed and it had jurisdiction over the matter pursuant to 28 U.S.C. § 1332. *See* Doc. # 67. Oral argument on the Trade Association Defendants' Motion was rescheduled and held on December 9, 1999. The Court denied the Trade Association Defendants' Motion on January 27, 2000. *See* Doc. # 81.

The Court now turns to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) for failure to state any cause of action cognizable under Ohio law.

### Motion to Dismiss Standard

The Court will dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998) (quotes and citation omitted). The Court "must construe the complaint in a light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995), *cert. denied*, 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996). On a motion to dismiss the Court presumes that a plaintiff's "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotes and citation omitted).

### Discussion

Defendants argue that there are "three over-arching reasons" why this case should be dismissed: (1) the case should be dismissed as a matter of public policy; (2) Plaintiffs' Complaint fails to state a claim under Ohio law; and, (3) Plaintiffs' claims encroach upon the United States Constitution. Plaintiffs respond that their claims cannot be dismissed as a matter of public policy; do not violate the Constitution; state proper causes of action under Ohio law; and, that they are entitled to the relief they seek.

### I. Public Policy

■ Defendants argue that the Court should not "legislate on issues of public policy," but, ironically, should dismiss Plaintiffs' Complaint "as against public policy." (Defs.' Mot. at 4, 8.) The Court does not dismiss cases based on public policy; rather, a case will be dismissed if it fails "to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6).

Plaintiffs' lawsuit sets forth product liability claims, among others. Defendants argue that because firearms are "heavily

---

4. The Trade Association Defendants are American Shooting Sports Council, Inc.; National Shooting Sports Foundation, Inc.; and, Sporting Arms and Ammunition Manufacturer's Institute, Inc.

regulated,"[5] the Court would violate the "separation of powers" if this case is not dismissed because the Court would exercise a " 'legislative function by engaging in policy decisions and making or revising rules or regulations.' " (Defs.' Mot. at 6 (citation omitted).)[6] Defendants attempt to make their product, firearms, above the law and exempt from product liability lawsuits.

However, just as products liability lawsuits may be brought against other allegedly defective products, ranging from abrasive discs to yarn,[7] they may be brought against firearms. Indeed, products as heavily regulated as firearms, if not much more so, are subject to product liability lawsuits, from automobiles, *see MacPherson v. Buick Motor Company*, 217 N.Y. 382, 111 N.E. 1050 (1916), to medical devices, *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996), as well as other consumer products such as asbestos, birth control devices, tobacco products, and silicone breast implants. Courts are not "legislating" or "making or revising rules and regulations" when they enforce existing state product liability laws. They are enforcing the state's power "to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Id.* at 475, 116 S.Ct. 2240. Defendants' argument that this law-

suit against their products must be dismissed because such a complaint is against public policy widely misses the mark.

## II. Ohio Law

### A. Legislative Jurisdiction

Defendants argue that the City of Cleveland may not legislate beyond its borders. (Defs.' Mot. at 8.) As Plaintiffs properly point out, this is a lawsuit, not an ordinance, (Pls.' Br. in Opp'n at 9), and thus the City is not "legislating" for territory outside of its limits. Therefore, Defendants' argument that the limits on a municipality's power to "regulate or legislate" outside its corporate boundaries warrants dismissal of Plaintiffs' Complaint fails.

### B. Costs of Public Services

Defendants argue that the Court should apply an "amplification" of Ohio's "firefighter's rule," and hold that the City's costs of providing public services are not recoverable as a matter of law. They argue that because "the provision of police and other governmental services to respond to and to prevent crime or accidents are normal, traditional governmental functions, the logical application of Ohio's 'fireman's rule' prevents municipal recovery for the costs of those services." (Defs.' Mot. at 12.)

---

**5.** Some would argue with Defendants' characterization: "Compared with most other consumer products, guns are virtually unregulated. Guns are not under the auspices of the Consumer Product Safety Commission, which regulates the safety of virtually every other U.S. consumer product. A child's teddy bear or a child's squirt gun is more closely regulated than a handgun in this country." Harold H. Reader, *Are Guns the Next Tobacco?*, AMERICAN BAR ASSOCIATION, BRIEF, Spring, 1999, at 2.

**6.** Defendants ascribe to James Madison the political maxim that the legislative, executive, and judiciary departments must be separate and distinct. They quote Madison as writing: "Were the power of judging joined with the legislative ... the judge would then be the legislator." (Defs.' Mot. at 6 (citing Federalist No. 47).) However, the quote and the

maxim are *not* Madison's, but Montesquieu's. Madison, in Federalist No. 47, was merely quoting Montesquieu and reciting arguments made by *Anti*–Federalists who were objecting to the Constitution because it supposedly violated this maxim. Madison's argument in rebuttal, continuing from Federalist Nos. 47 to 51, was "that unless these departments be so far connected and blended as to give to each a constitutional control over the other, the degree of separation which the maxim requires, as essential to a free government, can never in practice be duly maintained." THE FEDERALIST No. 48, at 308 (James Madison) (Isaac Kramnick ed., 1987).

**7.** For an extensive A to Y catalogue of products subject to products liability suits, see LOUIS R. FRUMER & MELVIN I. FRIEDMAN, PRODUCTS LIABILITY, Vol. 11 (1997).

■ The "firefighter's rule" generally provides that an owner or occupier of private property is not liable to firefighters or police officers who enter the premises and are injured while performing their official job duties. *See Hack v. Gillespie*, 74 Ohio St.3d 362, 658 N.E.2d 1046, 1051 (1996); *Scheurer v. Trustees of the Open Bible Church*, 175 Ohio St. 163, 192 N.E.2d 38, 43 (1963). Plaintiffs argue that Defendants' "amplification" of the firefighter's rule is a "radical new principle" that goes far beyond the scope of the settled law. The Court agrees.

Ohio's firefighter's rule addresses the liability of the owner or occupier of private property to firefighters and police officers who may, responding to an emergency, "enter a homeowner's or occupier's premises at any time, day or night." *Hack*, 658 N.E.2d at 1050–51. On the one hand, because a landowner or occupier can rarely anticipate the presence of safety officers on the premises, the Supreme Court of Ohio has held that the burdens placed on Ohio's landowners, occupiers, and insurers would be too great if firefighters and police officers were classified, in all instances, as invitees to whom a duty of reasonable care was owed. *Id.* Thus, firefighters and police officers are distinguished from the duty owed to others who enter an owner's or occupier's private property, such as water, electric, and gas meter readers, postal workers, and others. *Id.*

On the other hand, because firefighters and police officers should not be required to bear the burden of the loss incurred by their injury, the State of Ohio has distributed this cost to its taxpayers by including firefighters and police officers under the Workers Compensation Act since 1913. *Scheurer*, 192 N.E.2d at 42.

The Supreme Court of Ohio has also outlined several exceptions where the firefighter rule does not apply to shield the owner or occupier of private property from suit.[8] In addition, the firefighter's rule is limited to private property and does not encompass injuries to firefighters and police officers in areas that are held open to the general public. *Brady v. Consolidated Rail Corp.*, 35 Ohio St.3d 161, 519 N.E.2d 387 (1988).

■ It would be a deafening amplification of Ohio law that would allow the firefighter's rule to bar Plaintiffs' suit. Defendants argue that this Court should prohibit municipal recovery for all governmental functions, such as police, medical, fire and emergency services, and other related expenditures, because these are "the kinds of traditional services and functions that a municipality is expected to provide" and which "are most efficiently and fairly spread among the public." (Defs.' Mot. at 13, 15.) However, Defendants fail to cite a single case from Ohio that even comes close to advocating such a view.[9]

---

8. An owner or occupier of private property may be liable to a firefighter or police officer who enters the premises and is injured while performing official duties if "(1) the injury was caused by the owner's or occupier's willful or wanton misconduct or affirmative act of negligence; (2) the injury was the result of a hidden trap on the premises; (3) the injury was caused by the owner's or occupier's violation of a duty imposed by statute or ordinance enacted for the benefit of firefighters or police officers; or (4) the owner or occupier was aware of the firefighter's or police officer's presence on the premises, but failed to warn them of any known, hidden danger thereon." *Hack*, 658 N.E.2d at 1050.

9. Defendants place heavy reliance on a 17 year old, 2 page, Ninth Circuit case. In *City of Flagstaff v. Atchison, Topeka and Santa Fe Ry. Co.*, 719 F.2d 322 (9th Cir.1983), the court, applying its interpretation of Arizona law, announced a broad new rule that the cost of public services for protection from fire or safety hazards is to be borne by the public and not by the negligent tortfeasor whose actions created the need for the services. *Id.* at 323. Not only is this broad rule not the law in Ohio, the *Flagstaff* court noted an exception from their rule, applicable to the matter at hand, stating that acts of private parties which create public nuisances that the government seeks to abate are actionable and not covered by this new rule. *Id.* at 324.

Far from a firefighter attempting to recover for an injury received while on duty on private property, the City of Cleveland is attempting to recover for the costs of the services of police officers, firefighters, doctors, nurses, ambulance attendants, judges, prosecutors, jailors, social workers, and others, imposed on the City by an alleged unreasonably dangerous product and public nuisance. The Defendants here are not landowners or occupiers of private property, but rather manufacturers and promoters of a product concerning which Plaintiffs have filed suit under Ohio's product liability, public nuisance, and unjust enrichment laws. The Plaintiffs here cannot turn to a workers compensation scheme or other means for obtaining compensation for their alleged injuries. In addition, the Plaintiffs have alleged that Defendants' wrongdoing was willful, intentional and purposeful, and involved affirmative negligence; *mens rea* and circumstances to which the firefighters rule does not apply. *See Hack,* 658 N.E.2d at 1051.

## C. "Remoteness Doctrine"

Defendants argue that Plaintiffs' claims are barred by the "remoteness doctrine." Defendants are confused: no such independent doctrine exists. "Remoteness," as the term is used in legal doctrine and in the cases cited by Defendants, either relates to, and is merely an element of, whether a plaintiff properly has standing to bring a claim or whether a plaintiff has shown the existence of proximate causation as an element of a specific claim. However, either by intention or accident, Defendants refrain from using the terms "standing" or "proximate causation" in the main text of their Motion to Dismiss.[10] Because Defendants argue generally that remoteness bars Plaintiffs' claims, and do not

argue the elements of the individual claims, the Court will turn to the question of whether Plaintiffs have proper standing to bring their claims.

■ "Standing is 'the threshold question in every federal case.'" *Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir.1999) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In an Article III court, where the judicial power is limited to actual "cases" or "controversies," *see* Art. III, § 2, standing is a matter of federal law and does not depend on state law or the party's prior standing in state court. *Id.* at 495, 95 S.Ct. 2197 (citations omitted). In order to meet "the irreducible constitutional minimum of standing", three elements must be present: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized[11] and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of independent action of some third party not before the court; and, (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision of the court. *Defenders of Wildlife,* 504 U.S. at 560–61, 112 S.Ct. 2130.

■ "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561, 112 S.Ct. 2130. Here, because Defendants removed this matter to federal court, they are the party invoking this Court's jurisdiction and therefore they have the burden to show that these elements do not exist. When standing is challenged on a motion to dis-

---

**10.** Defendants mention "proximate cause" in the main text of their Reply brief, but continue to argue that a "remoteness doctrine" generally bars all Plaintiffs' claims. As noted above, "remoteness" is not a doctrine unto itself; it comes into play in determining standing and proximate causation.

**11.** By particularized, the Court means that the injury must affect the plaintiff in a personal and individual way. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n. 1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

miss, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth,* 422 U.S. at 501, 95 S.Ct. 2197. Further, the Court presumes that "general allegations embrace those specific facts that are necessary to support the claim." *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. 2130 (quoting *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

■ In the matter at hand, Plaintiffs' general allegations are presumed to embrace the specific facts needed to establish standing. Defendants have not met their burden to show that Plaintiffs' general allegations do not establish standing. First, Plaintiffs have alleged that they suffered an "injury in fact" which is concrete, particularized, and imminent; indeed the harm has already occurred in substantial part and will continue unless abated. The City alleges that as a result of Defendants' unreasonably dangerous and negligently designed handguns: the City has suffered harm; lost substantial tax revenue due to lower productivity; and, "has been obligated to pay millions of dollars in enhanced police protection, emergency services, police pension benefits, court and jail costs, and medical care." (Pls.' Opp'n at 21.) Such losses are an "injury in fact," and Plaintiffs' allegations are sufficiently concrete and particularized on a motion to dismiss.

• Defendants respond that Plaintiffs' injuries are not particularized or "injuries in fact" because their claims are too remote and derivative. Defendants recite the Sixth Circuit's recitation of the Supreme Court's analysis of the proximate cause element of a civil RICO claim: " 'a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover.' " *Coyne,* 183 F.3d at 495 (quoting *Holmes v. Securities Investor Protec-*

*tion Corp.,* 503 U.S. 258, 268–69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992)).

In *Holmes,* the district court had entered summary judgment for the defendant, ruling that the plaintiffs did not have standing to assert civil RICO claims predicated on violations of the Securities and Exchange Commission Rules and that plaintiffs had failed to satisfy the proximate cause element under RICO. *See Holmes,* 503 U.S. at 263–64, 112 S.Ct. 1311. The Ninth Circuit reversed on both counts. The Supreme Court then granted certiorari, skipped over the standing issue, *see id.* at 276, 112 S.Ct. 1311 (O'Connor, J., concurring in part and concurring in the judgment), and, in reversing the circuit court, decided that plaintiffs had failed to meet the proximate cause element of civil RICO. Not only was the Court reviewing a case that had been disposed of on summary judgment, as opposed to a motion to dismiss, but the Court was dealing with an element of the offense at issue.

Although the circuit court in *Coyne* recognized that the "constitutional requirements for standing are proof of injury in fact, causation, and redressability", *Coyne,* 183 F.3d at 494, the circuit court imported the Supreme Court's proximate causation analysis in *Holmes* into the "injury in fact" analysis of the case before it. However, causation (*i.e.,* who caused the injury) is a prong two question in the standing analysis, and should not be considered under prong one's question of whether there was, in fact, an actual injury.

In regard to the prong one "injury in fact" analysis, the Supreme Court has stated that more is required than "an injury to a cognizable interest"; rather, what is required is that "the party seeking review be himself among the injured." *Defenders of Wildlife,* 504 U.S. at 563, 112 S.Ct. 2130 (citations and quotes omitted). Further, past exposure to illegal conduct does not show a present case or controversy if unaccompanied by any continuing, present adverse effects. *Id.* (citations and quotes omitted). In the matter at hand, the City

itself was injured; an injury that has continuing, present adverse effects. Thus, the City was injured in fact and prong one is satisfied.

Second, under the facts alleged, there is a causal connection between the Plaintiffs' injuries and the conduct complained of, *i.e.*, the injury will be fairly traceable to the challenged action if Plaintiffs are correct in their allegation that the handguns manufactured by Defendants are unreasonably dangerous and negligently designed. Of course, the action must not wholly be the result of the independent action of some third party. However, Plaintiffs' claims, as alleged in their Complaint, are the "fairly traceable" result of Defendants' actions of allegedly designing and manufacturing unreasonably dangerous products.

Third, as in other products liability cases, it is likely that Plaintiffs' injury could be redressed by a favorable decision of this Court. Under this threshold determination of the irreducible minimum that is required for standing to sue in federal court, Plaintiffs properly have standing.

 In addition to the constitutional requirements, the Sixth Circuit has recently stated that a plaintiff must also satisfy three additional, if somewhat overlapping, "prudential standing restrictions." *Coyne,*

183 F.3d at 494. These are: (1) a plaintiff must assert its own rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties;[12] (2) a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens; and, (3) in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question. *Id.*

In the matter at hand, Plaintiffs are asserting their own rights and interests and, while their claims would impact the health and safety of others, their claims are not based on the rights of others, but rather the rights of the City to sue for the harm and economic losses it has incurred, as well as their claims of unjust enrichment and nuisance abatement. In addition, Plaintiffs' claims are not a generalized grievance shared by a large class of citizens, but a specific claim for losses which the City has suffered. Finally, the Plaintiffs' claims fall within the "zone of interests" regulated by the statutes in question. Regarding the claims arising under the Ohio Product Liability Act, Plaintiffs' claims are clearly within the zone of interests of the statute. Because "governmental entities" are explicitly included under the Act's definition of "person,"[13] they are specifically included in the definition of a

---

12. Of course, this isn't always the case. An association has standing to bring suit on behalf of its members when (1) the individual members would have standing to sue in their own right: (2) the interests the association seeks to protect are germane to its purpose; and, (3) the nature of the claim and the relief sought are such that the presence of the individual members is not required. *See Hunt v. Washington Apple Adver. Comm.,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In addition, third-party standing is permitted where (1) the litigant has suffered an injury that gives it a sufficiently concrete interest in the outcome of the issue in dispute; (2) the litigant has a close relationship with the third party; and, (3) there is some hindrance to the third party's ability to protect her or his own interests *See Powers v. Ohio.* 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). *See also, e.g., Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925)

(school-student); *Barrows v. Jackson,* 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) (seller-purchaser); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), (doctor-patient); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (beer vendor-customer); *J.L. Spoons, Inc. v. City of Brunswick,* 49 F.Supp.2d 1032 (N.D.Ohio 1999) (employer-employee).

13. " 'Person' has the same meaning as in division (C) of section 1.59 of the Revised Code and also includes governmental entities." OHIO REV. CODE § 2307.71(J). Section 1.59(C) of the Revised Code states: " 'Person' includes an individual. corporation, business trust, estate, trust, partnership, and association."

"claimant," who is a "person who asserts a product liability claim or on whose behalf a product liability claim can be asserted". OHIO REV. CODE §§ 2307.71(A)(1), (J). Thus, Plaintiffs are "within the class of persons sought to be benefitted by the provision at issue." *Holmes*, 503 U.S. at 287, 112 S.Ct. 1311 (Scalia, J., concurring in the judgment).[14]

In sum, on a motion to dismiss, the Court finds that Defendants, the party invoking this Court's jurisdiction, have failed to meet their burden to show that standing does not exist. Of course, the Court accepted as true all material allegations of the Complaint, construed the Complaint in favor of the complaining party, and presumed that Plaintiffs' general allegations embraced those specific facts that are necessary to support their claims. Whether Plaintiffs could meet the higher burden of a summary judgment motion or at trial "with the manner and degree of evidence required at the[se] successive stages of the litigation", *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130, is of no moment. Plaintiffs have met the irreducible constitutional minimum of standing, as well as the additional prudential standing requirements.

### D. Failure to State a Product Liability Claim

■ Defendants argue that Plaintiffs have failed to properly state strict product liability claims against Defendants. Specifically, Defendants argue that Plaintiffs have improperly attempted to impose collective, industry-wide, or alternative liability; failed to allege the required elements

of their improperly aggregated claims; cannot make out a claim based on the deliberate infliction of intentional injuries; cannot make out a claim because there is no duty to warn of the obvious risks of firearms; and, may not state a tort claim for purely economic loss.

Defendants attempt to show that Plaintiffs are "expressly" barred from bringing their claims by citing the Ohio Revised Code with a duplicitous eye. Defendants cite the following, excerpting the parts in bold:

A manufacturer shall not be held liable for damages based on a product liability claim that asserts any of the following theories:

(A) Industrywide or enterprise liability, including, but not limited to, any claim that seeks to impose liability on an entire industry or enterprise, on any members of an entire industry or enterprise, or on any trade association of an entire industry or enterprise **that alleges both of the following:**

(1) **Joint awareness of product risks;**

(2) **Joint development of product safety standards or delegation of safety functions to an industry trade association or another entity[.]**

OHIO REV. CODE § 2307.791. Regardless of Defendants' omission, Plaintiffs argue that their claims do not rely on a theory of collective or industry-wide liability, or alternative liability.[15] In addition, Plaintiffs are not arguing for market-share liability. *See Sutowski v. Eli Lilly & Co.*, 82 Ohio

---

**14.** Defendants quote Justice Scalia as stating that " 'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith.' " *Holmes*, 503 U.S. at 287, 112 S.Ct. 1311. However, Justice Scalia noted that the zone of interests analysis "will vary according to the nature of the ... offenses upon which those causes of action are based." *Id.* at 288, 112 S.Ct. 1311. Thus, while "for want of nail, a kingdom was lost" may not state a major cause of action against the blacksmith in some tort actions, if the kingdom was lost

because the blacksmith's nail was defective or inherently dangerous, it may be a statement of of a major cause of action in product liability.

**15.** The Ohio Revised Code provides that a manufacturer shall not be held liable for damages based on a product liability claim on a theory of "[a]lternative liability, except when all possible tortfeasors are named and subject to the jurisdiction of the court." OHIO REV. CODE § 2307.791(B).

St.3d 347, 696 N.E.2d 187 (1998) (holding that market-share liability is not an available theory of recovery in a products liability action). Rather, Plaintiffs contend that each Defendant manufactures and distributes "defective products" which are the cause of Plaintiffs' injuries and damages. Plaintiffs have properly stated a claim for which relief could be granted and their product liability claims are not barred under this section of the Revised Code.

Next, Defendants argue that Plaintiffs have failed to allege the required elements of their improperly aggregated claims. They contend that a manufacturer can be held liable in strict product liability or negligent design only for the flaws in its own product at the time the product left the manufacturer's plant; and these flaws must have caused injury to a specific plaintiff. Plaintiffs have pled as much. Plaintiffs plead that each and every firearm of each Defendant is defective because the Defendants fail to incorporate in the manufacturing process any personalized safety devices for the firearms.

Defendants also argue that Ohio law does not support a product liability action based on the infliction of intentional injuries by the deliberate misuse of a product. However, in *Perkins v. Wilkinson Sword,* 83 Ohio St.3d 507, 700 N.E.2d 1247 (1998), the Supreme Court of Ohio held that the risk-benefit test of the Ohio Products Liability Act may be used to prove that a design in a properly functioning lighter is defective. Thus, a product is defective in design "where the manufacturer fails to incorporate feasible safety features to prevent harm caused by foreseeable human error." *Id.* at 1250.

The language that Defendants rely on, that a product is defective in design when it is unreasonably dangerous when used in an *intended* manner, applies to the consumer-expectation test; a test that was eliminated by the Ohio legislature. The risk-benefit test does not contain an intended use requirement. The test is, according to statute, whether the foreseeable risks[16] associated with a product's design or formulation, at the time it left control of its manufacturer, exceeded the benefits[17] associated with that design. OHIO REV. CODE § 2307.75. Thus, even where a product is misused in an unintended use of the product, that product may be defective if the risks associated with the unintended use of a product (*e.g.,* a child playing with a properly functioning lighter) is reasonably foreseeable and outweighs the benefits associated with that design. *See also Calmes v. Goodyear Tire & Rubber Co.,* 61 Ohio St.3d 470, 575 N.E.2d 416 (1991) (Unreasonable misuse is not a defense to a strict liability defective product claim). While it may be an unintended use of the Defendants' product to commit homicide with a firearm, the risks associated with that unintended use may be found to be reasonably foreseeable and to outweigh the benefit of a firearm manufactured without a personalized safety device.

Defendants argue that there is no duty to warn of the open and obvious risks of firearms. While Ohio does not recognize the "obvious danger" defense in a design defect claim, *Perkins,* 700 N.E.2d at 1251, provision is made in Ohio Revised Code § 2307.76(B) for an "open and obvious risk" defense in failure to warn claims. The statute provides: "A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge." OHIO REV. CODE § 2307.76(B). This Court cannot say as a matter of law that it is an "open and

---

16. A nonexhaustive list of factors to consider in determining the foreseeable risks associated with the design or formulation of a product may be found at Ohio Revised Code § 2307.75(B).

17. A nonexhaustive list of factors to consider in determining the benefits associated with the design or formulation of a product may be found at Ohio Revised Code § 2307.75(C).

obvious risk" or a matter of common knowledge that handguns would be used by some individuals, *e.g.*, children, to harm themselves or others, and that a proper warning or instruction would not be used by a manufacturer exercising reasonable care. Whether the manufacturer Defendants prevail on their "open and obvious risk" defense is a matter of fact for a jury to decide.

Lastly, Defendants argue that Plaintiffs' claims under the Ohio Product Liability Act must be dismissed because recovery for purely economic loss is not permitted under Ohio law. However, the Act does provide for recovery of compensatory damages for any economic loss proximately resulted from the defective aspect of the product in question when the claimant is entitled to recover compensatory damages for harm. OHIO REV. CODE § 2307.79. As noted above, a "governmental entity" is a "person" under the Act. OHIO REV. CODE § 2307.71(J). And a "claimant" is a "person who asserts a product liability claim". OHIO REV. CODE § 2307.71(A)(1). Thus, the Ohio legislature certainly contemplated governmental entities recovering for harm caused by a defective product. "Harm" includes death, physical injury to "person", serious emotional distress, and physical damage to property other than the product involved, but excludes "economic loss". OHIO REV. CODE § 2307.71(G). Plaintiffs argue that they have cited in their Complaint numerous examples of damages suffered by the City which are not confined to pure economic loss. As noted above, on a motion to dismiss, a plaintiff's general allegations embrace those specific facts that are necessary to support the claim. Because Plaintiffs have asserted allegations that they suffered physical damage, they survive a motion to dismiss; of course, in subsequent proceedings with their attendant higher levels of proof, they will be required to prove how and to what extent they suffered. If Plaintiffs are able to prove that they suffered harm, they will be able to recover compensatory damages for their economic losses if they can show that those losses proximately resulted from the defective aspect of the handguns.

### E. Failure to State a Negligent Design Claim for Lack of Duty

■ Defendants argue that Plaintiffs' negligent design claim [18] must fail because Plaintiffs cannot establish a duty on the part of the manufacturers running to Plaintiffs. A duty of care for the protection of a plaintiff against an unreasonable risk of injury is owed to all people "to whom injury may reasonably be anticipated[.]" *Gedeon v. East Ohio Gas Co.*, 128 Ohio St. 335, 190 N.E. 924, 926 (1934). A concern arises with less foreseeable plaintiffs when a defendant breaches a duty to one group of plaintiffs and also causes injury as a result to another group of plaintiffs to whom a foreseeable risk of injury might or might not have been created at the time of the original negligent act. Under Ohio tort law, "[t]he existence of duty largely depends on the forseeability of the injury." *Commerce & Industry Ins. Co. v. City of Toledo*, 45 Ohio St.3d 96, 543 N.E.2d 1188, 1192 (1989) (citing, *inter alia*, *Gedeon*, 190 N.E. 924). "The test for foreseeability is whether a reasonably prudent person, under the same or similar circumstances as the defendant, should have anticipated that injury to the plaintiff or to those in like situations is the probable result of the performance or nonperformance of an act." *Id.* (citation omitted). "It is enough that the act in question may, in all human probability, produce harm to persons similarly situated." *Gedeon*, 190 N.E. at 926. It cannot be said, as a matter of law, that Defendants are free from negligence because they do not owe Plaintiffs a duty of care. It is now, unfortunately, the common American experience that firearms in the hands of children or other

---

**18.** In *Carrel v. Allied Prods. Corp.*, 78 Ohio St.3d 284, 677 N.E.2d 795 (1997), the Supreme Court of Ohio held that the common law claim of negligent design survived the enactment of the Ohio Products Liability Act.

unauthorized users can create grave injury to themselves and others, thus creating harm to municipalities through physical and economic injury. It is often for a jury to decide whether a plaintiff falls within the range of a defendant's duty of care and whether that duty was fulfilled. *Id.; Commerce & Industry*, 543 N.E.2d at 1192. In this matter, the question is whether a reasonably prudent gun manufacturer should have anticipated an injury to the Plaintiffs as a probable result of manufacturing, marketing, and distributing a product with an alleged negligent design.

### F. Failure to State an Unjust Enrichment Claim

▉▉▉▉▉ Defendants argue that Plaintiffs do not state a cause of action for unjust enrichment. In order to maintain a cause of action for unjust enrichment under Ohio law, a plaintiff must allege: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and, (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Telephone Management Corp. v. The Goodyear Tire & Rubber Co.*, 32 F.Supp.2d 960, 972 (N.D.Ohio 1998) (citations omitted). *See also Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (1984); *Hughes v. Oberholtzer*, 162 Ohio St. 330, 123 N.E.2d 393, 396–97 (1954); *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923, 927 (1938). Unjust enrichment arises not only where an expenditure by one party adds to the property of another, but also where the expenditure saves the other from expense or loss. *See* 18 OH. JUR. 3D *Contracts* § 343 (1980).

▉▉▉▉ Plaintiffs allege that they have conferred a benefit upon Defendants, *i.e.*, that the City has paid for what may be called the Defendants' externalities—the costs of the harm caused by Defendants' failure to incorporate safety devices into their handguns and negligent marketing practices. Plaintiffs further allege that

Defendants are aware of this obvious benefit, and that retention of this benefit is unjust. Plaintiffs have stated a claim and thus, at this stage of the litigation, their claim survives.

### G. Failure to State a Public Nuisance Claim

▉▉▉ Defendants argue that Plaintiffs' claims for public nuisance must be dismissed. Plaintiffs argue that the nuisance at hand is a qualified nuisance, as opposed to an absolute nuisance. The Supreme Court of Ohio has stated that a "civil action based on the maintenance of a qualified nuisance is essentially an action in tort for the negligent maintenance of a condition, which, of itself creates an unreasonable risk of harm, ultimately resulting in injury. The dangerous condition constitutes the nuisance. The action for damages is predicated upon carelessly or negligently allowing such condition to exist." *Allen Freight Lines, Inc. v. Consolidated Rail Corp.*, 64 Ohio St.3d 274, 595 N.E.2d 855, 856 (1992) (citation omitted). "The allegations of nuisance and negligence therefore merge, as the nuisance claims rely upon a finding of negligence." *Id.*

Plaintiffs' nuisance claims will likely rise or fall with their negligence claims. As they have stated a claim in negligence, their claim of nuisance survives as well.

### III. Constitutional Law

Defendants assert that Plaintiffs' claims are an attempt to "regulate [a] lawful national industry" and, as such, are barred under the United States Constitution's Interstate and Foreign Commerce Clauses, Art. I, § 8, the Import/Export Clause, Art. I § 10, and the Due Process Clause of the Fourteenth Amendment. Defendants cite *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), in support of their argument. However, the *BMW* Court was concerned with an Alabama jury's "grossly excessive" punitive damage award that attempted to alter BMW's nationwide policy, rather

**830**

than protecting Alabama consumers and the Alabama economy. *See id.* at 572–73. The Court stated that Alabama did not have the power to punish BMW for conduct that was lawful in other states *and* that had no impact on its residents, nor did Alabama have the power to deter conduct that is lawful in other jurisdictions. *Id.*

As noted in this Court's prior Opinion, Plaintiffs here are not a state or municipality enacting regulations that may impede interstate commerce; rather, Mayor Michael White and the City of Cleveland are plaintiffs in a lawsuit alleging, *inter alia,* that a particular product is defective and unreasonably dangerous. Nor is there any hint that Plaintiffs are attempting to punish Defendants for conduct that is lawful in other states and that has not affected their residents, or that Plaintiffs are attempting to deter conduct that is lawful in other jurisdictions. Plaintiffs, according to their Complaint, are attempting to protect their own citizens and economy, and to recover for their own injuries and losses. Plaintiffs' claims, like any other product liability claim that implicates a national manufacturer, are not barred by the United States Constitution. Whether Defendants will be subject to a punitive damage award that is so "grossly excessive" as to violate due process, as in *BMW,* is not a concern at this time and remains, perhaps, to be seen.

### Conclusion

For the reasons stated above, the Motions to Dismiss of Certain Defendants (Doc. # 21) and Defendant B.L. Jennings (Doc. # 23) are DENIED.

IT IS SO ORDERED.